NO. 07-01-0493-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 16, 2002



______________________________




MIGUEL LUCANO LUCERO AKA MICHAEL LUCERO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 40,760-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1) 

 Pursuant to a plea agreement, appellant Miguel Lucano Lucero aka Michael Lucero 
plead guilty to aggravated sexual assault of a child and was granted deferred adjudication
and placed on community supervision for five years. Upon the State's motion to proceed
with an adjudication of guilt, on November 14, 2001, a hearing was held and evidence was
presented that appellant had violated the terms of community supervision. He was
adjudicated guilty by the trial court and sentenced to 25 years confinement. Appellant filed
a pro se general notice of appeal. (2) By a sole point of error, appellant contends he did not
knowingly, voluntarily, and intelligently waive his federal constitutional right against self-incrimination at the sentencing phase of his adjudication hearing. Based upon the
rationale expressed herein, we affirm.

 Approximately one year after appellant was granted deferred adjudication and
placed on community supervision, the State filed a motion to proceed with an adjudication
of guilt based on 16 alleged violations of the conditions of his community supervision. 
After the State waived two of the allegations, appellant entered an open plea of true to the
remaining fourteen. However, the standard inquiries made by the trial court during the
initial guilty plea colloquy designed to protect appellant from entering an involuntary plea
were not repeated at the hearing on the motion to proceed with an adjudication of guilt. 
Instead, the trial court confirmed appellant's open plea of true to the allegations in the
State's motion and immediately adjudicated him guilty of aggravated sexual assault
committed against a 12 year old girl, a friend of appellant's younger sister. 

 During the punishment phase the State indicated that it had no witnesses to
present. Appellant then voluntarily chose to testify to explain why he had violated the
conditions of his community supervision. During cross-examination, appellant indicated
he was aware of the range of punishment and upon further questioning by the prosecutor,
testified that he did not think it was his idea to have the victim perform oral sex on him. 
The only objection made by defense counsel, which was sustained, was directed at the
prosecutor's sidebar comment. After defense counsel indicated she had no further
evidence to present, the State called the victim to the stand. She testified without
objection that it was appellant's idea for her to perform oral sex because she was unaware
of such an act at the time. After both sides closed, the trial court sentenced appellant to
25 years confinement.

 Relying on Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424
(1999) and Carroll v. State, 42 S.W.3d 129 (Tex.Cr.App. 2001) (en banc), (3) appellant
contends he did not voluntarily and intelligently waive his federal constitutional right
against self-incrimination at the sentencing phase of the hearing on the State's motion to
proceed with an adjudication of guilt. We agree, but based on the reasoning expressed
herein, determine that the error was harmless.

 The Fifth Amendment to the United States Constitution prevents a person from
being compelled to be a witness against himself in any criminal matter. Since Mitchell it
is well settled that a defendant retains the right to remain silent during sentencing. 119
S.Ct. at 1311. Where a sentence has not yet been imposed a defendant may have a
legitimate fear of adverse consequences from further testimony. 119 S.Ct. 1314. Further,
the Court again rejected the idea that a plea of guilty completes the incrimination of the
defendant thereby extinguishing the right. Id; accord Estelle v. Smith, 451 U.S. 454, 462,
101 S.Ct. 1866, 68 L.Ed.2d 359 (1982). Only where there can be no further incrimination,
i.e., where the sentence has been fixed and the judgment of conviction has become final,
is the assertion of the right without basis. Id. 

 In light of Mitchell, the document executed by appellant waiving his rights pursuant
to articles 1.14 and 1.15 of the Texas Code of Criminal Procedure did not waive his right
against self-incrimination during sentencing. See Carroll, 42 S.W.3d at 132-33. As
appellant points out in his brief, waiver of the right against self-incrimination is
"conspicuously absent" from the written waivers. Based on Mitchell and Carroll, we hold
that appellant did not voluntarily and intelligently waive his Fifth Amendment right against
self-incrimination because he was not admonished by the trial court at the sentencing
phase. We must now determine whether appellant suffered harm due to the trial court's
error in failing to admonish him. 

 Since the Court's decision in Cain v. State, 947 S.W.2d 262, 264 (Tex.Cr.App.
1997), except for certain federal constitutional errors labeled by the United States
Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of
a plea, or any other mandatory requirement, is categorically immune to a harmless error
analysis. See Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 1265, 113 L.Ed.2d
302 (1991). Structural error, which is subject to automatic reversal, has been found only
in six instances. Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)
(total deprivation of the right to counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71
L.Ed.2d 749 (1927) (an impartial judge); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617,
88 L.Ed.2d 598 (1986) (unlawful exclusion of members of the defendant's race from a
grand jury); McKaskle v. Wiggins, 465 U.S. 168, 177-78, n.8, 104 S.Ct. 944, 950-51, n.8,
79 L.Ed.2d 122 (1984) (the right to self-representation); Waller v. Georgia, 467 U.S. 39,
49, n.9, 104 S.Ct. 2210, 2217, n.9, 81 L.Ed.2d 31 (1984) (the right to public trial), and
Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective
reasonable doubt instruction). After a thorough search, we are unaware of any case
holding that a violation of the Fifth Amendment is structural error subject to automatic
reversal. Thus, we apply Rule 44.2(a) of the Texas Rules of Appellate Procedure to
determine whether the error contributed to appellant's punishment beyond a reasonable
doubt. See Johnson v. State, 43 S.W.2d 1, 5 (Tex.Cr.App. 2001) (holding that it is the
responsibility of the appellate court to assess harm and not a burden that rests on
appellant or the State). 

 In Carroll I, the appellate court's decision was reversed and the cause remanded
for further proceedings because based on Mitchell the Court of Criminal Appeals could not
conclude that Carroll knowingly, voluntarily, and intelligently waived her federal
constitutional right against self-incrimination. (4) 42 S.W.3d at 133. Carroll entered open
pleas of guilty to two counts of delivery of marihuana. At the sentencing hearing, the trial
court advised defense counsel that if Carroll did not testify pursuant to the State's request,
it would "reflect very seriously on the Court's decision." Reluctantly, Carroll testified to
rigorous questions by the State and the trial court, believing that she had lied in her
testimony, refused to probate her sentences. Carroll I, 946 S.W.2d at 881. She was
sentenced to concurrent five-year sentences and a $5,000 fine. Id. at 880. She appealed
the punishment portion of the judgments contending the trial court had coerced her to
testify at the sentencing phase when it advised defense counsel that if she invoked her
privilege against self-incrimination, it would consider the invocation as a circumstance
against her when assessing punishment. Carroll IV, 42 S.W.3d at 130. After the cause
was remanded by Carroll IV, the Fort Worth Court conducted a harm analysis and
determined that because the trial court relied on coerced testimony in assessing
punishment it could not conclude beyond a reasonable doubt that the error made no
contribution to Carroll's sentences. 68 S.W.3d at 253. 

 Appellant voluntarily chose to testify at the sentencing phase and was represented
by counsel. Upon cross-examination, he answered questions openly and without
hesitation. A review of the record shows no coercion by the trial court nor by the State. 
Furthermore, a trial court is vested with a great degree of discretion in imposing an
appropriate sentence. Jackson v. State, 680 S.W.2d 809, 814 (Tex.Cr.App. 1984) (en
banc). A penalty imposed within the range established by the Legislature should not be
disturbed on appeal. Nunez v. State, 565 S.W.2d 536, 538 (Tex.Cr.App. 1978). The
range of punishment for a first degree felony is life imprisonment or for any term of not
more than 99 or less than five years. Tex. Pen. Code Ann. § 12.32(a) (Vernon 1994). 
Appellant's sentence of 25 years confinement being on the lower end of the range of
punishment, we determine beyond a reasonable doubt that the trial court's error in failing
to admonish him did not contribute to his punishment. His sole point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

 


Quinn, J., concurring.


Boyd, S.J., joins in the disposition of the case, but agrees with Justice Quinn's concurring
opinion.



Publish.

NO. 07-01-0493-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 16, 2002


______________________________



MIGUEL LUCANO LUCERO, AKA MICHAEL LUCERO,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 40,760-D; HON. DON EMERSON, PRESIDING


_______________________________



 Concurring Opinion

 _______________________________

Before QUINN and REAVIS, JJ. and BOYD, SJ. (5) 

 To the extent the majority concludes that the judgment should be affirmed, I concur. 
I respectfully disagree, however, with the proposition that appellant did not waive his right
against self-incrimination when he took the witness stand and testified on his own behalf.




Applicable Law


 That the State may not compel one to incriminate himself during a criminal
proceeding is beyond dispute. Similarly indisputable is the rule that this right exists during
both phases of a criminal trial, i.e. the guilt/innocence and punishment phases. See
Carroll v. State, 42 S.W.3d 129, 131-33 (Tex. Crim. App. 2001) (so holding). Yet, equally
clear is the rule "that when an accused voluntarily takes the stand he waives his privilege
against self-incrimination at the hearing at which he takes the stand." Hernandez v. State,
506 S.W.2d 884, 886 (Tex. Crim. App. 1974); accord Bryan v. State, 837 S.W.2d 637, 643
(Tex. Crim. App. 1992) (so holding); Brumfield v. State, 445 S.W.2d 732, 735 (Tex. Crim.
App. 1969) (so holding). This is so because by voluntarily testifying on his own behalf, the
accused is not being compelled to incriminate himself.

 Indeed, the proscription against self-incrimination reads: "[n]o person . . . shall be
compelled in any criminal case to be a witness against himself . . . ." U.S. Const. Amend.
V. As can be readily seen, the operative term in the provision is "compelled." Simply put,
the Fifth Amendment does not prohibit every instance of self-incrimination but those where
the incrimination is "obtained by a 'genuine compulsion of testimony.'" United States v.
Washington, 431 U.S. 181, 187, 97 S. Ct. 1814, 1818-19, 52 L. Ed. 2d 238 (1977) (quoting
Michigan v. Tucker, 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974)). "Absent some
officially coerced self-accusation," the amendment "is not violated by even the most
damning admissions." Id. For instance, a police officer need not stop one who walks into
a precinct house and attempts to confess to a crime. Miranda v. Arizona, 384 U.S. 436,
478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Nor must the officer first inform the
individual of his right to remain silent before the confession can be used against him. This
is so because "[v]olunteered statements of any kind are not barred by the Fifth Amendment
and their admissibility is not affected by" the need to admonish prior to custodial
interrogation. Id. The same is no less true when a defendant opts to voluntarily speak on
his own behalf. While the better practice may be to tell the individual about his right to
remain silent and the implications arising from the decision to speak, the failure to do so
does not render the ensuing testimony inadmissible as a violation of the Fifth Amendment
if the testimony was nonetheless voluntarily given. Powers v. United States, 223 U.S. 303,
313-14, 32 S.Ct. 281, 283-84, 56 L.Ed. 448 (1912) (concluding that the Fifth Amendment
was not violated when Powers voluntarily opted to testify at a preliminary hearing even
though he was not admonished about his right against self-incrimination). 

 In sum, whether the Fifth Amendment is implicated when an individual decides to
testify depends not upon whether the witness "made a knowing decision to testify, but why"
he chose to testify. Harrison v. United States, 392 U.S. 219, 223, 88 S.Ct. 2008, 2010,
20 L.Ed.2d 1047 (1968) (emphasis in original). The court must assess whether the
decision constituted an exercise in free will or an act arising from coercion. If it is the
former, then the individual has not been denied his right to avoid self-incrimination. If it
is the latter, then the same may not be true. And, to determine which it was, the totality of
the circumstances must be perused. Washington, 431 U.S. at 188, 97 S.Ct. at 1819. (6)

Application of the Law


 Here, appellant initially pled guilty to the offense of aggravated sexual assault of a
child. The trial court found that the plea was knowing and voluntary, deferred his
adjudication of guilt, and placed him on community supervision. Thereafter, the State
moved to adjudicate appellant's guilt, and appellant subsequently pled true to various of
the grounds asserted in the motion. This led the trial court to conclude that appellant
violated the conditions of his community supervision. Next, when asked if she had "any
witnesses on punishment," counsel for appellant stated that her client "would like to
testify." At that point the trial court said, "[c]ome right up and take a seat on the witness
stand." Appellant did and testified on his own behalf. 

 It is obvious from the foregoing recitation of the evidence before us that appellant
had legal counsel before appearing as a witness in his own defense. Whether that
counsel informed his client of the Fifth Amendment and his rights thereunder cannot be
discerned, however. Nevertheless, the record does illustrate that appellant 1) uttered no
objection to testifying before appearing on the witness stand, 2) failed to invoke any
privilege against self-incrimination, 3) failed to indicate in any way that he was ignorant of
his Fifth Amendment right prohibiting self-incrimination, and 4) failed to indicate in any way
that he would not have testified had the court admonished him about that amendment. It
also depicts that the trial court merely invited him to the stand at the behest of his attorney. 
Neither the trial court nor the prosecution said or did anything suggesting that either urged
him in any way to testify. Nor does the record contain any evidence from which one could
reasonably infer that 1) either the trial court or the prosecution wanted him to testify or
intended to hold his silence against him in any way or 2) appellant hesitated, in any way,
in testifying on his own behalf. 

 Simply put, the totality of the circumstances at bar evince no coercion on the part
of the court or anyone else. Appellant voluntarily took the stand, and in doing so, waived
any complaint about self-incrimination. Hernandez, 506 S.W.2d at 886; Brumfield, 445
S.W.2d at 735. That he was not admonished by the trial court about his right to remain
silent does not change that result. Powers, 223 U.S. at 313-14, 32 S.Ct. at 283-84. 

 Finally, the cases of Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143
L.Ed.2d 424 (1999) and Carroll, 42 S.W.3d at 131-33, on which appellant relies, are
inapposite. Neither involved a defendant who volunteered to testify on his own behalf
during the punishment phase of the trial. Rather, in each, the trial court concluded that the
respective defendant had no right to remain silent. Mitchell, 526 U.S. at 319, 119 S.Ct. at
1310; Carroll, 42 S.W.3d at 133. And, because he or she allegedly had no such right, the
defendants' silence was a factor considered in setting punishment. Mitchell, 526 U.S. at
319, 119 S.Ct. at 1310-11; Carroll, 42 S.W.3d at 130-31. None of that occurred here. 
More importantly, Mitchell said nothing about the trial court having to admonish a
defendant about the Fifth Amendment before that individual could voluntarily testify on his
own behalf. Nor did Carroll so hold. Instead, it merely noted that the trial court failed to
admonish her about the Fifth Amendment as it attempted to coerce her into testifying. 
Carroll, 42 S.W.3d at 133. That is a far cry from holding that admonishments must be
afforded a defendant who voluntarily chooses to appear in his defense. (7) 

 Accordingly, I would affirm the judgment not because the purported error was
harmless but because there was no error. 


 Brian Quinn

 Justice


Publish. 


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. The State recognizes that appellant's general notice of appeal is sufficient to
invoke our jurisdiction because by his complaint, he challenges the punishment phase and
not his conviction. See Vidaurri v. State, 49 S.W.3d 880, 884 (Tex.Cr.App. 2001). 
3. Carroll was decided on March 7, 2001, months prior to the hearing on the State's
motion to proceed with an adjudication of guilt.
4. Carroll was originally appealed in 1997, and after five decisions, has come full
circle. See Carroll I, 946 S.W.2d 879 (Tex.App-Fort Worth 1997); Carroll II, 975 S.W.2d
630 (Tex.Cr.App. 1998); Carroll III, 12 S.W.3d 92 (Tex.App.-Fort Worth 1999); Carroll IV,
42 S.W.3d 129 (Tex.Cr.App. 2001); and Carroll V, 68 S.W.3d 250 (Tex.App.-Fort Worth
2002, no pet.).
5. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 
6. If the test is not whether the witness "made a knowing decision to testify, but why," as the Supreme
Court stated in Harrison , 392 U.S. at 223, 88 S.Ct. at 2010, then, logically, whether or not anyone informed
the accused of his Fifth Amendment right is not controlling. Indeed, this observation finds support in Powers. 
Again, there it was held that the witness's testimony was not obtained in derogation of the Fifth Amendment
even though he was not informed by the court of his right to remain silent. Powers, 223 U.S. at 313-14, 32
S.Ct. at 283-84. Yet, one must nonetheless proceed with caution for there is seldom a bright line when it
comes to rules of law, constitutional or otherwise. Given that the totality of the circumstances control, 
Washington, 431 U.S. at 188, 97 S.Ct. at 1819, the totality of the circumstances must be perused. Even the
court in Powers did that. See Powers, 223 U.S. at 313-14, 32 S.Ct. 283-84 (finding no violation of the Fifth
Amendment because Powers 1) did not invoke the privilege against self-incrimination, 2) did not indicate
that he was ignorant of the privilege, and 3) did not claim he would have remained silent had he been
admonished of the privilege). Simply put, that a complainant is not admonished about the Fifth Amendment
before testifying alone does not render his testimony inadmissible via that amendment. 
7. Indeed, if the court were to read Carroll as appellant suggests (i.e. holding that one must be
admonished about his right to remain silent before he can voluntarily testify) then, implicitly, it would be
rejecting the totality test set forth in Washington. No longer would all the circumstances be of import. 
Rather, the mere circumstance of whether or not admonishments were administered would become
dispositive. To reject the teachings of the United States Supreme Court in Washington surely is not what
the Court of Criminal Appeals intended in Carroll.