NO. 07-02-0224-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 6, 2005


______________________________



JIMMY LEE FLORES
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;



NO. 1998; HON. KELLY G. MOORE, PRESIDING


_______________________________



Opinion on Motion for Rehearing


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ., 

 Pending before the court is the motion of Jimmy Lee Flores, appellant, for rehearing. 
Though several matters are raised, we address only one. It involves the statement in our
opinion wherein we said that the indicia of reliability is no longer pertinent in determining
whether the admission of a comment violates the Confrontation Clause of the Sixth
Amendment to our United States Constitution. Appellant contends that we are wrong, and
the State agrees with him. We disagree, however, and overrule the motion for rehearing. 

 As stated in Crawford, when reviewing a confrontation clause challenge, it must be
determined whether the statements are testimonial. If they are, then they can be admitted
into evidence only "where the declarant is unavailable, and only where the defendant has
had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59, 124
S.Ct. 1354, 1369,158 L.Ed.2d 177 (2004). The Supreme Court shunned the idea of leaving
"the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to
amorphous notions of 'reliability.'" 541 U.S. at 60, 124 S.Ct. at 1370,158 L.Ed.2d at 177.

 Moreover, in those situations wherein the statement is found to be nontestimonial,
the following passage from Crawford is quite instructive.

 Where nontestimonial hearsay is at issue, it is wholly consistent with the
Framers' design to afford the States flexibility in their development of hearsay
law - as does Roberts, and as would an approach that exempted such
statements from Confrontation Clause scrutiny altogether.




541 U.S. at 68, 124 S.Ct. at 1374,158 L.Ed.2d at 177 (emphasis added).

Therefore, we are quite correct in stating that "gone is the test of reliability" when the court
is faced with a confrontation clause argument. "Where testimonial evidence is at issue, .
. . the Sixth Amendment demands what the common law required: unavailability and a prior
opportunity for cross examination." Id. However, when the evidence is nontestimonial,
then we are to "afford the States flexibility in their development of hearsay law" and
"exempt[] such statements from Confrontation Clause scrutiny. . . ." Id. (emphasis added). 
So, once it is determined that the comment is nontestimonial, then the confrontation clause
inquiry ends. (1) 

 In the case before us, we found the statement to be nontestimonial. That ended
further analysis of appellant's confrontation clause argument per the directives of Crawford. 
We, therefore, overrule the motion for rehearing. (2) 

 

 Brian Quinn 

 Chief Justice 

 

Publish. 







 


 
1. See e.g., Leavitt v. Arave, 383 F.3d 809, 830 n.22 (9th Cir. 2004) cert. denied, 125 S.Ct. 2540 (2005);
State v. Anderson, No. E2004-00694-CCA-R3CD, 2005 WL 171441, *3 (Tenn. Crim. App. Jan. 27, 2005);
Anderson v. State, 111 P.3d 350 (Alaska App. 2005); U.S. v. Felton, No. 02-2414, 2005 WL 1792458, *9 (1st
Cir. (Mass.) July 29, 2005); Womack v. State, 614 S.E.2d 909, 914 (Ga. App. May 18, 2005); Rivera v. State,
No. 04-03-00830-CR, 2004 WL 3015165, *1 (Tex. App.-San Antonio Dec. 30, 2004, no pet.) (holding that
Crawford did not apply because appellant had failed to make a confrontation complaint); Marsh v. State, 818
N.E.2d 143, 146 (Ind. App. Nov. 24, 2004) (interpreting Crawford to apply only to testimonial statements);
State v. Nix, No. C-030696, 2004 WL 2315035, *17 (Ohio App. 1 Dist. Oct. 15, 2004); Waltmon v. State, No.
08-03-00317-CR, 2004 WL 1801793, *6 (Tex. App.-El Paso Aug. 12, 2004, pet. ref'd); Bunton v. State, 136
S.W.3d 355, 368 (Tex. App.-Austin 2004, pet. ref'd); State v. Smith, No. 2004-KK-3140, 2005 WL 1507773,
*1 (La. June 24, 2005); Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004);Crawford v. State, 139
S.W.3d 462, 463 (Tex. App.-Dallas 2004, pet. ref'd); Rogers v. State, No. 02-04-212-CR, 2005 WL 1593933,
*3 (Tex. App.-Fort Worth July 7, 2005, no pet. h.); Tyler v. State, No. 14-04-0544-CR, 2005 WL 1430463, *2
(Tex. App.-Houston [14th Dist.] 2005, no pet.); Davis v. State, No. 03-04-00014-CR, 2005 WL 1173964, *1
(Tex. App.-Austin 2005, no pet. h.); Spencer v. State, 162 S.W.3d 877, 878 (Tex. App.-Houston [14th Dist.]
2005, no pet. h.); Eslora v. State, No. 04-04-0012-CR, 2005 WL 763233, *4 (Tex. App.-San Antonio 2005,
pet. filed); Moreno Denoso v. State, 156 S.W.3d 166, 181(Tex. App.-Corpus Christi 2005, pet. filed); Davis
v. State, No. 02-03-305-CR, 2005 WL 183141, *2 (Tex. App.-Fort Worth 2005, pet. filed); Wilson v. State, 151
S.W.3d 694, 697 (Tex. App.-Fort Worth 2004, pet. ref'd).
2. We advise those filing motions for rehearing that the line between being informative and being
insolent may be close but should not be crossed. Motions for rehearing are read, and those which cross the
line will not be met with favor. 



 not testify pursuant to the State's request,
it would "reflect very seriously on the Court's decision." Reluctantly, Carroll testified to
rigorous questions by the State and the trial court, believing that she had lied in her
testimony, refused to probate her sentences. Carroll I, 946 S.W.2d at 881. She was
sentenced to concurrent five-year sentences and a $5,000 fine. Id. at 880. She appealed
the punishment portion of the judgments contending the trial court had coerced her to
testify at the sentencing phase when it advised defense counsel that if she invoked her
privilege against self-incrimination, it would consider the invocation as a circumstance
against her when assessing punishment. Carroll IV, 42 S.W.3d at 130. After the cause
was remanded by Carroll IV, the Fort Worth Court conducted a harm analysis and
determined that because the trial court relied on coerced testimony in assessing
punishment it could not conclude beyond a reasonable doubt that the error made no
contribution to Carroll's sentences. 68 S.W.3d at 253. 

 Appellant voluntarily chose to testify at the sentencing phase and was represented
by counsel. Upon cross-examination, he answered questions openly and without
hesitation. A review of the record shows no coercion by the trial court nor by the State. 
Furthermore, a trial court is vested with a great degree of discretion in imposing an
appropriate sentence. Jackson v. State, 680 S.W.2d 809, 814 (Tex.Cr.App. 1984) (en
banc). A penalty imposed within the range established by the Legislature should not be
disturbed on appeal. Nunez v. State, 565 S.W.2d 536, 538 (Tex.Cr.App. 1978). The
range of punishment for a first degree felony is life imprisonment or for any term of not
more than 99 or less than five years. Tex. Pen. Code Ann. § 12.32(a) (Vernon 1994). 
Appellant's sentence of 25 years confinement being on the lower end of the range of
punishment, we determine beyond a reasonable doubt that the trial court's error in failing
to admonish him did not contribute to his punishment. His sole point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

 


Quinn, J., concurring.


Boyd, S.J., joins in the disposition of the case, but agrees with Justice Quinn's concurring
opinion.



Publish.

NO. 07-01-0493-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 16, 2002


______________________________



MIGUEL LUCANO LUCERO, AKA MICHAEL LUCERO,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 40,760-D; HON. DON EMERSON, PRESIDING


_______________________________



 Concurring Opinion

 _______________________________

Before QUINN and REAVIS, JJ. and BOYD, SJ. (5) 

 To the extent the majority concludes that the judgment should be affirmed, I concur. 
I respectfully disagree, however, with the proposition that appellant did not waive his right
against self-incrimination when he took the witness stand and testified on his own behalf.




Applicable Law


 That the State may not compel one to incriminate himself during a criminal
proceeding is beyond dispute. Similarly indisputable is the rule that this right exists during
both phases of a criminal trial, i.e. the guilt/innocence and punishment phases. See
Carroll v. State, 42 S.W.3d 129, 131-33 (Tex. Crim. App. 2001) (so holding). Yet, equally
clear is the rule "that when an accused voluntarily takes the stand he waives his privilege
against self-incrimination at the hearing at which he takes the stand." Hernandez v. State,
506 S.W.2d 884, 886 (Tex. Crim. App. 1974); accord Bryan v. State, 837 S.W.2d 637, 643
(Tex. Crim. App. 1992) (so holding); Brumfield v. State, 445 S.W.2d 732, 735 (Tex. Crim.
App. 1969) (so holding). This is so because by voluntarily testifying on his own behalf, the
accused is not being compelled to incriminate himself.

 Indeed, the proscription against self-incrimination reads: "[n]o person . . . shall be
compelled in any criminal case to be a witness against himself . . . ." U.S. Const. Amend.
V. As can be readily seen, the operative term in the provision is "compelled." Simply put,
the Fifth Amendment does not prohibit every instance of self-incrimination but those where
the incrimination is "obtained by a 'genuine compulsion of testimony.'" United States v.
Washington, 431 U.S. 181, 187, 97 S. Ct. 1814, 1818-19, 52 L. Ed. 2d 238 (1977) (quoting
Michigan v. Tucker, 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974)). "Absent some
officially coerced self-accusation," the amendment "is not violated by even the most
damning admissions." Id. For instance, a police officer need not stop one who walks into
a precinct house and attempts to confess to a crime. Miranda v. Arizona, 384 U.S. 436,
478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Nor must the officer first inform the
individual of his right to remain silent before the confession can be used against him. This
is so because "[v]olunteered statements of any kind are not barred by the Fifth Amendment
and their admissibility is not affected by" the need to admonish prior to custodial
interrogation. Id. The same is no less true when a defendant opts to voluntarily speak on
his own behalf. While the better practice may be to tell the individual about his right to
remain silent and the implications arising from the decision to speak, the failure to do so
does not render the ensuing testimony inadmissible as a violation of the Fifth Amendment
if the testimony was nonetheless voluntarily given. Powers v. United States, 223 U.S. 303,
313-14, 32 S.Ct. 281, 283-84, 56 L.Ed. 448 (1912) (concluding that the Fifth Amendment
was not violated when Powers voluntarily opted to testify at a preliminary hearing even
though he was not admonished about his right against self-incrimination). 

 In sum, whether the Fifth Amendment is implicated when an individual decides to
testify depends not upon whether the witness "made a knowing decision to testify, but why"
he chose to testify. Harrison v. United States, 392 U.S. 219, 223, 88 S.Ct. 2008, 2010,
20 L.Ed.2d 1047 (1968) (emphasis in original). The court must assess whether the
decision constituted an exercise in free will or an act arising from coercion. If it is the
former, then the individual has not been denied his right to avoid self-incrimination. If it
is the latter, then the same may not be true. And, to determine which it was, the totality of
the circumstances must be perused. Washington, 431 U.S. at 188, 97 S.Ct. at 1819. (6)

Application of the Law


 Here, appellant initially pled guilty to the offense of aggravated sexual assault of a
child. The trial court found that the plea was knowing and voluntary, deferred his
adjudication of guilt, and placed him on community supervision. Thereafter, the State
moved to adjudicate appellant's guilt, and appellant subsequently pled true to various of
the grounds asserted in the motion. This led the trial court to conclude that appellant
violated the conditions of his community supervision. Next, when asked if she had "any
witnesses on punishment," counsel for appellant stated that her client "would like to
testify." At that point the trial court said, "[c]ome right up and take a seat on the witness
stand." Appellant did and testified on his own behalf. 

 It is obvious from the foregoing recitation of the evidence before us that appellant
had legal counsel before appearing as a witness in his own defense. Whether that
counsel informed his client of the Fifth Amendment and his rights thereunder cannot be
discerned, however. Nevertheless, the record does illustrate that appellant 1) uttered no
objection to testifying before appearing on the witness stand, 2) failed to invoke any
privilege against self-incrimination, 3) failed to indicate in any way that he was ignorant of
his Fifth Amendment right prohibiting self-incrimination, and 4) failed to indicate in any way
that he would not have testified had the court admonished him about that amendment. It
also depicts that the trial court merely invited him to the stand at the behest of his attorney. 
Neither the trial court nor the prosecution said or did anything suggesting that either urged
him in any way to testify. Nor does the record contain any evidence from which one could
reasonably infer that 1) either the trial court or the prosecution wanted him to testify or
intended to hold his silence against him in any way or 2) appellant hesitated, in any way,
in testifying on his own behalf. 

 Simply put, the totality of the circumstances at bar evince no coercion on the part
of the court or anyone else. Appellant voluntarily took the stand, and in doing so, waived
any complaint about self-incrimination. Hernandez, 506 S.W.2d at 886; Brumfield, 445
S.W.2d at 735. That he was not admonished by the trial court about his right to remain
silent does not change that result. Powers, 223 U.S. at 313-14, 32 S.Ct. at 283-84. 

 Finally, the cases of Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143
L.Ed.2d 424 (1999) and Carroll, 42 S.W.3d at 131-33, on which appellant relies, are
inapposite. Neither involved a defendant who volunteered to testify on his own behalf
during the punishment phase of the trial. Rather, in each, the trial court concluded that the
respective defendant had no right to remain silent. Mitchell, 526 U.S. at 319, 119 S.Ct. at
1310; Carroll, 42 S.W.3d at 133. And, because he or she allegedly had no such right, the
defendants' silence was a factor considered in setting punishment. Mitchell, 526 U.S. at
319, 119 S.Ct. at 1310-11; Carroll, 42 S.W.3d at 130-31. None of that occurred here. 
More importantly, Mitchell said nothing about the trial court having to admonish a
defendant about the Fifth Amendment before that individual could voluntarily testify on his
own behalf. Nor did Carroll so hold. Instead, it merely noted that the trial court failed to
admonish her about the Fifth Amendment as it attempted to coerce her into testifying. 
Carroll, 42 S.W.3d at 133. That is a far cry from holding that admonishments must be
afforded a defendant who voluntarily chooses to appear in his defense. (7) 

 Accordingly, I would affirm the judgment not because the purported error was
harmless but because there was no error. 


 Brian Quinn

 Justice


Publish. 


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. The State recognizes that appellant's general notice of appeal is sufficient to
invoke our jurisdiction because by his complaint, he challenges the punishment phase and
not his conviction. See Vidaurri v. State, 49 S.W.3d 880, 884 (Tex.Cr.App. 2001). 
3. Carroll was decided on March 7, 2001, months prior to the hearing on the State's
motion to proceed with an adjudication of guilt.
4. Carroll was originally appealed in 1997, and after five decisions, has come full
circle. See Carroll I, 946 S.W.2d 879 (Tex.App-Fort Worth 1997); Carroll II, 975 S.W.2d
630 (Tex.Cr.App. 1998); Carroll III, 12 S.W.3d 92 (Tex.App.-Fort Worth 1999); Carroll IV,
42 S.W.3d 129 (Tex.Cr.App. 2001); and Carroll V, 68 S.W.3d 250 (Tex.App.-Fort Worth
2002, no pet.).
5. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 
6. If the test is not whether the witness "made a knowing decision to testify, but why," as the Supreme
Court stated in Harrison , 392 U.S. at 223, 88 S.Ct. at 2010, then, logically, whether or not anyone informed
the accused of his Fifth Amendment right is not controlling. Indeed, this observation finds support in Powers. 
Again, there it was held that the witness's testimony was not obtained in derogation of the Fifth Amendment
even though he was not informed by the court of his right to remain silent. Powers, 223 U.S. at 313-14, 32
S.Ct. at 283-84. Yet, one must nonetheless proceed with caution for there is seldom a bright line when it
comes to rules of law, constitutional or otherwise. Given that the totality of the circumstances control, 
Washington, 431 U.S. at 188, 97 S.Ct. at 1819, the totality of the circumstances must be perused. Even the
court in Powers did that. See Powers, 223 U.S. at 313-14, 32 S.Ct. 283-84 (finding no violation of the Fifth
Amendment because Powers 1) did not invoke the privilege against self-incrimination, 2) did not indicate
that he was ignorant of the privilege, and 3) did not claim he would have remained silent had he been
admonished of the privilege). Simply put, that a complainant is not admonished about the Fifth Amendment
before testifying alone does not render his testimony inadmissible via that amendment. 
7. Indeed, if the court were to read Carroll as appellant suggests (i.e. holding that one must be
admonished about his right to remain silent before he can voluntarily testify) then, implicitly, it would be
rejecting the totality test set forth in Washington. No longer would all the circumstances be of import. 
Rather, the mere circumstance of whether or not admonishments were administered would become
dispositive. To reject the teachings of the United States Supreme Court in Washington surely is not what
the Court of Criminal Appeals intended in Carroll.